UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRIAN SCOTT,

    Plaintiff,

v.   Case No. 8:20-cv-2807-KKM-CPT

WALMART, INC., WAL-MART ASSOCIATES, INC., WAL-MART STORES EAST, LP, and ROBERT SMITH,

    Defendants.

_____/

### ORDER

This matter is before the Court on Plaintiff Brian Scott's Motion to Remand this Action to State Court (Doc. 6) and Defendants' Response in Opposition to Remand (Doc. 8). Because diversity jurisdiction is not satisfied and the action could not have originally been brought in federal court, the Court **GRANTS** Plaintiff's Motion.

**I.    Background**

On October 14, 2020, Plaintiff filed a Complaint in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, alleging violations of the Florida Civil Rights Act of 1992 (FCRA) and an intentional infliction of emotional distress claim under Florida law against Defendants. (Doc. 1, Attachment 1). After being served on October 29, 2020, Defendants timely filed a Notice of Removal

1

on November 30, 2020, *see* 28 U.S.C. § 1446(b); Fed. R. Civ. P. 6(a)(1)(C), alleging that diversity jurisdiction existed under 28 U.S.C. §§ 1332, 1441, and 1446, (Doc. 1, at 1–2).

On December 14, 2020, Plaintiff filed a Motion to Remand the action to state court, arguing that Defendants "failed to meet their burden to show diversity or that the jurisdictional amount in controversy ($75,000) has been satisfied." (Doc. 6, at 2). In its Response in Opposition to the Motion to Remand, Defendants argue that complete diversity exists because Defendant Robert Smith's citizenship should be ignored for jurisdictional purposes under the doctrine of fraudulent joinder and that Defendants have established that the amount in controversy more likely than not exceeds the jurisdictional requirement. (Doc. 8, at 4–24).

## II. Analysis

A civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court. *See* 28 U.S.C. § 1441. "One of the limited grounds of jurisdiction that federal courts have is diversity jurisdiction, which is the only source of jurisdiction available in this case." *Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277, 1280 (11th Cir. 2001). "Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds the statutorily prescribed amount, in this case $75,000." *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001) (citing 28 U.S.C. § 1332(a)). When a defendant removes an action from state court to federal court, the defendant "bears the burden of proving that federal jurisdiction exists." *Id.*

2

In determining "whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). Here, although Defendant Robert Smith's citizenship should be ignored when determining whether complete diversity exists, Defendants have not proved by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional requirement. Accordingly, diversity jurisdiction is not satisfied.

### a. Diversity of Citizenship & Fraudulent Joinder

To qualify for diversity citizenship, there must be complete diversity between the parties, which means no plaintiff may be a citizen of the same state as any defendant. *Legg v. Wyeth*, 428 F.3d 1317, 1320 n.2 (11th Cir. 2005). Citizenship, which is equivalent to domicile for purposes of diversity jurisdiction, is the key fact that must be alleged to establish diversity for a natural person. *See McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002); *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994).

Plaintiff is a citizen of Florida. (Doc. 1, at 2). Defendants Walmart Inc.; Wal-Mart Associates, Inc.; and Wal-Mart Stores East, LP are citizens of Delaware and Arkansas (Doc. 1, at 2–4)—the states in which Defendants are incorporated and have their principal places of business. *See* 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). Defendant Robert Smith, Plaintiff's former supervisor, is a citizen of Florida. (Doc. 1, at 5). Plaintiff argues that Defendants have not demonstrated

3

complete diversity because Mr. Smith is a proper defendant, and Mr. Smith and Plaintiff are both citizens of Florida. (Doc. 6, at 2). Defendants argue that under the doctrine of fraudulent joinder, Mr. Smith's citizenship should be ignored for the purpose of establishing complete diversity. (Doc. 1, at 4). If Mr. Smith's citizenship is ignored, then complete diversity would exist.

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Joinder has been deemed fraudulent when "there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant."[1] *Id.* (citation omitted). "The plaintiff need not have a winning case" against the nondiverse defendant." *Id.* Rather, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Crowe*, 113 F.3d at 1538; *see Triggs*, 154 F.3d at 1287. "When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Crowe*, 113 F.3d at 1538.

---

[1] Although the Eleventh Circuit has also acknowledged two other types of fraudulent joinder—"when there is outright fraud in the plaintiff's pleading of jurisdictional facts" and "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant"—neither of those types of fraudulent joinder are alleged or argued in this case. *Triggs*, 154 F.3d at 1287.

4

Intentional infliction of emotional distress is the only claim that Plaintiff alleges against Mr. Smith. (Doc. 1, Attachment 1). Because Mr. Smith's conduct as alleged is not sufficiently outrageous to support the tort of intentional infliction of emotional distress under Florida law, there is no possibility that Plaintiff can state a claim against Mr. Smith.

To establish a claim for intentional infliction of emotional distress, a plaintiff must allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[2] *Bordenkircher v. Am. Home Prods.*, No. 5:03-cv-0443-Oc-10GRJ, 2004 WL 6066924, at *4 (M.D. Fla. Jan. 26, 2004). "It is within the court's domain to determine whether the conduct alleged rises to the required level of outrageousness." *Id.*; *see Broberg v. Carnival Corp.*, 303 F. Supp. 3d 1313, 1317–18 (S.D. Fla. 2017) ("Whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law for the court to decide, not a question of fact.").

Plaintiff argues that his complaint satisfies the elements for an intentional infliction of emotional distress claim through his allegations that Plaintiff had a panic

---

[2] Extreme and outrageous conduct is just one of the tort's four elements. "Under Florida law, a plaintiff must plead the following elements in order to state a claim for intentional infliction of emotional distress: 1) extreme and outrageous conduct; 2) an intent to cause, or reckless disregard to the probability of causing, emotional distress; 3) severe emotional distress suffered by the plaintiff and 4) that the conduct complained of caused the plaintiff's severe emotional distress." *Broberg v. Carnival Corp.*, 303 F. Supp. 3d 1313, 1317 (S.D. Fla. 2017) (citation omitted).

attack at work; went to the hospital from his shift; remained in the hospital for three days; and that Mr. Smith, Plaintiff's supervisor, called Plaintiff "as he was driving to Walmart for his shift" and "fired [Plaintiff] for violating Walmart's absence 'points' policy." (Doc. 6, at 3–4).

Even accepting Plaintiff's allegations as true that his employment termination caused him extreme emotional distress and that Mr. Smith terminated Plaintiff's employment after Plaintiff had been in the hospital and while Plaintiff was "in an extremely fragile emotional state" (Doc. 6, at 3, 5), Plaintiff woefully fails to allege facts that approach the requisite standard for outrageous conduct. Plaintiff's allegations do not satisfy the high burden under Florida law requiring conduct that is "outrageous," "atrocious," or "utterly intolerable in a civilized society," which is necessary to support a claim for intentional infliction of emotional distress. *Bordenkircher*, 2004 WL 6066924, at *4; s*ee Broberg*, 303 F. Supp. 3d at 1317–18 ("While there is no exhaustive or concrete list of what constitutes outrageous conduct, Florida common law has evolved an extremely high standard.") (quoting *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012)). *Compare Williams v. Worldwide Flight Servs., Inc.*, 877 So. 2d 869, 870–71 (Fla. Dist. Ct. App. 2004) (finding that repeated racial epithets, false disciplinary reports, job termination threats, and assignment to dangerous duties were "reprehensible, objectionable, and offensive," but did not rise to the level of extreme and outrageous conduct). Because Plaintiff has failed to establish a claim for intentional infliction of emotional distress against Mr. Smith as a matter of law, the Court concludes that Mr.

6

Smith was fraudulently joined. Accordingly, the Court will ignore the citizenship of Mr. Smith for purposes of considering diversity of citizenship.

### b. Amount in Controversy

Because Defendants' Notice of Removal (Doc. 1) fails to include sufficient plausible allegations that the amount in controversy exceeds the jurisdictional threshold at the time of removal, Defendants have failed to prove by a preponderance of the evidence that the amount in controversy is satisfied.

#### (i) Background and Legal Standard

The Supreme Court has explained that a defendant's notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). "If a plaintiff makes an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional requirement." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (citation and punctuation omitted); *see Williams*, 269 F.3d at 1319. "If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." *Williams*, 269 F.3d at 1319. "A conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without setting forth the underlying facts

supporting such an assertion, is insufficient to meet the defendant's burden." *Id.* at 1319–20.

In his complaint, Plaintiff alleges that "[t]his is an action for damages in excess of $30,000.00, exclusive of costs and attorney's fees, for unlawful discrimination, retaliation, and termination in violation of the Florida Civil Rights Act of 1992 . . . and intentional infliction of emotional distress." (Doc. 1, Attachment A). Because Plaintiff alleges damages only "in excess of $30,000.00," it is not facially apparent from Plaintiff's complaint that the amount in controversy exceeds $75,000. The Court therefore must look to Defendants' notice of removal.

### (ii) Discussion

In their notice of removal, Defendants highlight that Plaintiff seeks the following relief in his complaint: (i) lost pay and lost benefits; (ii) compensatory damages, "including damages for emotional distress, humiliation and loss of dignity;" (iii) "an award to compensate Plaintiff for the adverse tax consequences of any back pay and compensatory damages awarded;" (iv) "an award of all interest;" (v) an award of all expenses and taxable costs; (vi) an award of reasonable attorneys' fees; (vii) an award of punitive damages; and (viii) "any further relief the Court deems just and equitable." (Doc 1, at 10–11). Back pay; compensatory damages, "including, but not limited to, damages for mental anguish, loss of dignity, and any other intangible injuries"; punitive damages; and attorney's fees are all recoverable under the FCRA. FLA. STAT. § 760.11(5)

(2020). Defendants argue that the amount in controversy requirement is met through Plaintiff's allegations for relief.

### (a)   Back Pay

Defendants and Plaintiff agree that Plaintiff earned $11.73 per hour in his employment at Walmart. (Doc. 1, at 12; Doc. 6, at 7). Defendants argue that, "[w]ith respect to lost wages, back pay should be calculated from the time of the adverse employment action through the date of trial." (Doc. 1, at 11). Using that timeframe, Defendants estimate that Plaintiff could recover approximately $45,512.40 in total backpay by calculating Plaintiff's hourly wage at forty hours a week for ninety-seven weeks—"approximately 45 weeks since January 21, 2020," the day that Plaintiff was terminated from his employment, plus "an additional 52 weeks of back pay to account of the expected time between now and trial (expected one year until trial)." (Doc. 1, at 12). Plaintiff argues that "the only real number Defendants have set forth to establish an amount in controversy is the alleged $21,114 in pay allegedly owed to Plaintiff" (Doc. 6, at 7)—the back pay from the time that Plaintiff was terminated from his employment until the date of the notice of removal.

There is a split of authority within this District as to whether back pay that accrues after removal should be considered when determining the amount in controversy. *See, e.g., Balkum v. Pier 1 Imports (U.S.), Inc.*, No. 6:17-cv-1299-Orl-37DCI, 2017 WL 3911560, at *2 (M.D. Fla. Sept. 7, 2007) (explaining that "courts within this District hold differing opinions on whether back pay that accrues in the time period

9

following removal through trial or judgment should be included when ascertaining the [amount in controversy]" and explaining that the Eleventh Circuit "has not resolved this split") (footnote omitted).[3] Because the amount in controversy is determined *at the time of removal*, this Court declines to consider back pay that accrued or will accrue after the date of removal. *See S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014) ("What counts is the amount in controversy *at the time of removal*.") (emphasis added). The fact that courts may use "deduction, inference, or other extrapolation" in determining the amount in controversy does not lend support for speculating about a future trial date. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 753 (11th Cir. 2010); *see Balkum*, 2017 WL 3911560, at *2; *see Bragg v. Suntrust Bank*, No. 8:16-CV139-T-33TBM, 2016 WL 836692, at *2 (M.D. Fla. Mar. 4, 2016) (explaining that although the case was set for trial, "it is possible-if not probable-that this employment action will reach a resolution without trial" and concluding that the "Court cannot base its jurisdiction on the calculation of back pay up to the date of a trial that may never occur").

Adhering to the Eleventh Circuit's guidance, this Court refuses to speculate about Plaintiff's potential relief post-removal for the purpose of determining the amount in controversy. *See Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1211 (11th Cir. 2007)

---

[3] Although Defendants point to an Eleventh Circuit case that affirmed a district court decision that included back pay through an estimated trial date, *see Wineberger v. RaceTrac Petroleum, Inc.*, 672 F. App'x 914, 917 (11th Cir. 2016), unpublished Eleventh Circuit opinions are not binding on this Court. *See* 11th Cir. R. 32–2 (providing that "unpublished opinions are not considered binding precedent"). Moreover, the District Court's decision was affirmed under a "highly deferential review" and the Eleventh Circuit did not address the particular issue of how to calculate back pay for the purpose of determining the amount in controversy. *See Wineberger*, 672 F. App'x at 916.

(disapproving "unabashed guesswork" and "speculation" at the amount-in-controversy stage). Thus, because the Court declines to consider back pay that accrued after the date of removal, Defendants have plausibly alleged only $21,114 in backpay (Plaintiff's hourly wage multiplied by 40 hours a week over 45 weeks).

### (b) Front Pay

Defendants contend that "[f]ront pay further augments the amount of lost wages in this action."[4] (Doc. 1, at 12). Plaintiff argues that "Defendants . . . set forth entirely speculative calculations for future lost earnings" (Doc. 6, at 7). The Court agrees. As an initial matter, the FCRA does not explicitly authorize a recovery of front pay. Neither front pay—which is the "money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement," *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001)—nor reinstatement or any comparable equitable relief is provided for in the statute's text. *See* FLA. STAT. § 760.11(5). Moreover, the cases that Defendants cite for support address an award of front pay under other federal statutes, not the FCRA. *See Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1349–51 (11th Cir. 2000) (discussing the district court's award of front pay under the Age Discrimination in Employment Act); *U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 619

---

[4] Defendants cite *Wineberger*, 672 F. App'x at 917, to support their proposition that an estimate of an employee's front pay should be included in the amount in controversy, but, as discussed in Footnote 3, unpublished Eleventh Circuit decisions are not binding on this Court. Additionally, the Eleventh Circuit did not purport to address the issue of whether front pay should be included in the amount in controversy calculation in *Wineberger*.

(11th Cir. 2000) (explaining that "*prevailing Title VII plaintiffs* are presumptively entitled to either reinstatement or front pay") (emphasis added); *Brown v. Cunningham Lindsey U.S., Inc.*, No. 305CV141J32HTS, 2005 WL 1126670, at *5 (M.D. Fla. May 11, 2005) (same). Indeed, the Court cannot find a binding Eleventh Circuit case that affirms or authorizes an award of front pay under a FCRA claim.

Even if front pay were authorized under the statute, front pay faces the same problem as back pay. Front pay is not in controversy at the time of removal and its calculation would require the Court to engage in "unabashed guesswork." *Lowery*, 483 F.3d at 1211; *see S. Fla. Wellness*, 745 F.3d at 1316 (explaining that the value of equitable relief must be "sufficiently measurable and certain," rather than "too speculative and immeasurable" to satisfy the amount-in-controversy requirement) (quoting *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000)). Accordingly, the Court finds that including an estimated award of front pay in this case is improper where the statutory authorization for such an award is absent in the first instance and its inclusion would necessarily rely on speculative estimates that are not in controversy at the time of removal.

### (c)   Compensatory Damages

Defendants contend that "district courts routinely include compensatory damages in the form of pain and suffering, which Plaintiff seeks in this case, in the jurisdictional amount." (Doc. 1, at 12). Defendants estimate that, "to the extent Plaintiff purports to seek emotional distress damages, $15,000.00 for emotional pain and

suffering is a conservative estimate to include in the amount in controversy calculation." (Doc. 1, at 14) (emphasis removed). Plaintiff argues that Defendants' estimate for these "other damages" is "entirely speculative." (Doc. 6, at 7). The Court agrees. Although Defendants estimate that Plaintiff may seek $15,000 in emotional distress damages, Defendants fail to allege any facts supporting that estimate or showing how Defendants calculated that estimate. *See Williams*, 269 F.3d at 1319–20 ("A conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the defendant's burden.")

It is true that "[t]he Eleventh Circuit has held that objective medical testimony is not necessary to support an award of emotional distress damages under FCRA, and a plaintiff's lay testimony concerning the emotional impact of illegal termination was itself sufficient to support such an award." (Doc. 1, at 13); *see Munoz*, 223 F.3d at 1349–50. But Defendants do not point to any facts, testimony, or any of Plaintiff's allegations to demonstrate how it calculated what emotional distress damages are in controversy. *See Lowery*, 483 F.3d at 1215 ("The absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars."). And based on the Court's common sense of an individual being fired in this context as alleged in the complaint, emotional distress damages from an objective person's perspective do not appear high here. *See Roe*, 613 F.3d at 1062–63 (permitting district courts to make "reasonable deductions, reasonable

13

inferences, or other reasonable extrapolations" from the pleadings to determine whether a case is removable and explaining that a district court need not "suspend reality or shelve common sense" in determining whether the face of a complaint establishes the jurisdictional amount and instructing courts to "use their judicial experience and common sense" in such determinations) (quoting *Pretka*, 608 F.3d at 770). Accordingly, Defendants fail to plausibly allege compensatory damages for amount in controversy purposes.

### (d)   Punitive Damages

Defendants also contend that "punitive damages must also be included in the amount in controversy, as they are recoverable under the FCRA." (Doc. 1, at 14). Defendants contend that, "[g]iven the facts alleged in the Complaint," "$25,000 in punitive damages is an appropriate estimate of what he could likely recover if the allegations are proven beyond a preponderance of the evidence." (Doc. 1, at 14–15).

Plaintiff argues that Defendants "assert that punitive damages would be $25,000 without any basis for that number whatsoever." (Doc. 6, at 7). The Court, once again, agrees. Defendants estimate that Plaintiff may seek $25,000 in punitive damages "[g]iven the facts alleged in the Complaint – namely, that Defendants failed to accommodate Plaintiff, that Plaintiff was retaliated against for allegedly complaining about discrimination and harassment in the workplace, and that Plaintiff was terminated on the date in which he was set to return to work after being 'Baker Acted.'" (Doc. 1, at 14). Relying on "judicial experience and common sense," "the Court is mindful of

14

the wholly speculative and unpredictable nature of jury awards in the area of punitive damages" and that "punitive awards are entirely dependent on the egregiousness of the particular violation." *Balkum*, 2017 WL 3911560, at *3. Without a specific showing that Plaintiff's claims alone would merit such awards and without specific evidence or factual allegations linking Plaintiff's claims to case law with similar facts where punitive damages are awarded in a similar amount, Defendants have failed to meet their burden that Plaintiff's punitive damages would amount to $25,000 or be sufficient to meet the jurisdictional threshold. *See id.*; *see also Lowery*, 483 F.3d at 1215.

Additionally, Defendants argue that "[u]nder the FCRA, the maximum punitive damage award allowable for a plaintiff is $100,000" such that "Plaintiff's request for punitive damages under the FCRA, alone, satisfies the 'amount in controversy' requirement."[5] (Doc. 1, at 14). But under that logic, every FCRA case filed in state court containing a request for punitive damages would automatically meet the jurisdictional minimum for removal to federal court. *Balkum*, 2017 WL 3911560, at *3. "That result would be untenable," and the Court rejects that argument. *Id.* (quoting *Boyd v. N. Trust Co.*, No. 8:15-CV-2928-T-33TBM, 2016 WL 640529, at *4 (M.D. Fla. Feb. 18, 2016)). Accordingly, Defendants fail to plausibly allege that punitive damages suffice to satisfy the amount in controversy.

---

[5] Defendants cite *Cowan v. Genesco, Inc.*, No. 3:14-CV-261-J-34JRK, 2014 WL 3417656, at *4 n.7 (M.D. Fla. July 14, 2014), in support of this proposition, but the Court in *Cowan* specifically stated that it was "not determin[ing] whether Plaintiff's request for punitive damages alone under the FCRA could establish the requisite amount in controversy."

### (e)    Attorney's Fees

Finally, Defendants argue that after "[a]dding Plaintiff's claim for attorneys' fees, which are recoverable under the FCRA, to the amount in controversy calculation, there is no question that the amount in controversy well exceeds the $75,000.00 threshold." (Doc. 1, at 15). Although generally excluded from the calculation, "[w]hen a statute authorizes the recovery of attorney's fees, a reasonable amount of those fees is included in the amount in controversy." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1265 (11th Cir. 2000). But Defendants merely allege that attorney's fees should be added to Plaintiff's claim and do not allege that a particular amount of fees should be added or provide the Court with the information necessary to calculate attorney's fees. *See Pretka*, 608 F.3d at 753–54 (explaining that "without facts or specific allegations, the amount in controversy could be divined . . . only through speculation," and "that is impermissible") (quoting *Lowery*, 483 F.3d at 1209, 1215). (punctuation omitted).

In their Response in Opposition to Plaintiff's Motion to Remand (Doc. 8), "Defendants estimate that the reasonable value of Plaintiff's attorneys' fees to date is at least $5,000," alleging that even though "Plaintiff's counsel has not provided the Court with his own reasonable estimate of the time spent working on this case at the time of removal," "it is . . . reasonable to value Plaintiff's counsel's hourly rate at $300.00." (Doc. 8, at 21). Defendants also cite unpublished district court cases for the proposition that courts in the Middle District have tripled "that initial number . . . [of] fees at the time of removal for purposes of calculating the amount in controversy" to account for

16

fees "associated with discovery and trial." *Id.* at 20 (citation and punctuation omitted). Defendants urge the Court to triple their estimate, reasoning that "$15,000 is an extremely conservative estimate of Plaintiff's counsel's attorney's fees through trial." *Id.* at 21.

The Court declines to triple Defendants' estimated $5,000 in attorney's fees because (1) arbitrarily tripling attorney's fees for work that will potentially occur in the future without any underlying factual allegations for such fees relies on impermissible speculation and because (2) tripling attorney's fees for discovery and trial expenses inherently takes into account expenses that would occur *after* the time of removal, rather than looking to the amount in controversy *at* the time of removal. The Eleventh Circuit has instructed that both of these practices are improper in an amount-in-controversy analysis. *See, e.g.*, *Pretka*, 608 F.3d at 751, 753–54; *Williams*, 269 F.3d at 1319–20. Accordingly, the Court refuses to triple Defendants' initial attorney's fees estimate. Moreover, as discussed in Section (b)(iii), even with the addition of $5,000 in attorney's fees, Defendants have failed to carry their burden to establish the amount in controversy.

### (iii) Conclusion

Defendants have made specific, plausible factual allegations about Plaintiff's back pay to establish that $21,114 is in controversy. Defendants have failed, however, to allege underlying facts to establish that the remaining requisite jurisdictional amount is in controversy through compensatory damages, punitive damages, and attorney's

17

fees. And even if the Court accepted the guesses of Defendants as to these latter three categories, they total only $66,114—falling short of exceeding the amount in controversy.[6] To the extent a question exists about the amount in controversy, any uncertainty about jurisdiction must be resolved in favor of remand. *Bechtelheimer v. Cont'l Airlines, Inc.*, 776 F. Supp. 2d 1319, 1321 (2011) ("[F]ederal courts must narrowly construe removal statutes and 'resolve all doubts about jurisdiction in favor of remand, and employ a presumption in favor of remand to state courts.'") (quoting *Henry v. K-Mart Corp.*, No. 8:10-CV-2105-T-33MAP, 2010 WL 5113558, at *3 (M.D. Fla. Dec. 9, 2010)); s*ee Crowe*, 113 F.3d at 1538 (describing the burden of the removing party as a "heavy one" and stating that the "district court must evaluate the factual allegations in the light most favorable to the plaintiff"). Thus, because $21,114 falls short of the requisite amount in controversy, Defendants have not satisfied their burden.

### c. Attorney's Fees and Costs

Plaintiff urges the Court to award him "attorney's fees and costs incurred as a result of Defendants' improper removal of this action" under 28 U.S.C. § 1447(c). (Doc. 6, at 9–10). When a court remands a case to state court, it may award attorney's fees, costs, and expenses incurred as a result of the removal. *See* 28 U.S.C. § 1447(c). "Absent unusual circumstances," however, "courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking

---

[6] This total is arrived at adding Defendants' allegations of back pay ($24,114), compensatory damages ($15,000), punitive damages ($25,000), and attorney's fees ($5,000).

removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). "Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.* This standard "should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Id.* at 140.

Although the Court has rejected Defendants' amount-in-controversy calculation after careful analysis, the Court recognizes that the law within this District is not entirely settled as to several of the issues discussed herein. More explicitly, the Court finds that Defendants had an objectively reasonable basis for believing removal to be proper. And the Court concluded that Plaintiff has fraudulently joined Mr. Smith to avoid removal entirely. Thus, considering that no unusual circumstances direct otherwise, the Court denies Plaintiff's fee request. *See id.* at 141.

### III.   Conclusion

Although complete diversity exists once Mr. Smith's citizenship is ignored under the doctrine of fraudulent joinder, Defendants have failed to satisfy their burden as to the amount in controversy. Because the requirements for diversity jurisdiction are not met, the Court does not have subject matter jurisdiction over the action.

Accordingly, it is **ORDERED**:

(1)  Plaintiff's Motion to Remand (Doc. 6) is hereby **GRANTED**.

(2) Plaintiff's request for attorney's fees and costs associated with the result of removal is hereby **DENIED**.

(3) The Clerk is **DIRECTED** to remand this action to the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, and to terminate all pending motions and deadlines and close the case.

**ORDERED** in Tampa, Florida, on March 17, 2021.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United State District Judge